AMORY W. CROSSMAN & another *vs.* CHARLES P. CARD.

Worcester.   Oct. 6, 1886. — Jan. 4, 1887.   DEVENS & W. ALLEN, JJ., absent.

A., who was a brickmaker, wished to borrow money of B., and, to secure him, leased his brick-yard to him, and thereafter the manufacture of bricks was carried on by A. in B.'s name, all the profits belonging to A.  A. also gave to B. a mortgage of land as further security.   Certain bricks were manufactured for a contractor, who paid for them ; and certain others were also made for the same person, which proved to be of an inferior quality, and were rejected by him.   In an annual statement of accounts between the parties, B. gave credit to A. for the bricks accepted, and also for those rejected, by the contractor.   In the statement of the next year, the price of the rejected bricks was charged back against A., and on the same day B. gave to A. a paper, containing the following : " This is to certify that I agree in final settlement with A., and when A. shall make good all demands or obligations which I may have against him, to deduct from the amount that may be due me " the amount allowed for the rejected bricks in the previous settlement.   The next year B. gave to A. another paper, containing the following : " This is to certify that I agree that, in final settlement with A., all the net profits I may make on the brick-yard during any and all of the years I may hire and run the same, shall go towards paying his indebtedness to me, as I run the yard for no other purpose than to assist him in paying such indebtedness."   A bill in equity brought by A. to redeem the land from the mortgage was referred to a master, who found that B. received on a day named a certain sum more for the bricks sold than he accounted for to A., which should be allowed to A. on final settlement ; and that A. should also be

allowed the price of said rejected bricks; and, in stating the account between the parties, the master placed the item of the rejected bricks before that for the bricks sold, and reckoned interest to the date of such statement on all items on both sides of the account, except on the price of the rejected bricks, and on the sum so received by B. for the bricks sold in excess of that accounted for. *Held*, that A. was entitled to have interest computed on both sums from the date of the receipt by B. of the last-named sum.

C. ALLEN, J. This is a bill in equity to redeem certain parcels of land from several mortgages given by the plaintiffs to one Alexander, the defendant's testator. The only question presented to us is whether the defendant ought to be held chargeable with interest on two items of credits to which the plaintiffs have been found entitled by the master who has stated the account between the parties. The question arises thus:

The plaintiffs were brickmakers, and wished to borrow money of Alexander. To secure him, they leased their brick-yard to him, and thereafter the manufacture of bricks was carried on by the plaintiffs in his name, all the profits belonging to them. They also gave to him the mortgages of land as further security for his original advances, and for the liabilities he would necessarily incur under this arrangement, and for future loans and accommodations.

Under this arrangement, in 1876, certain bricks of a special size were manufactured for a contractor, who paid for them; and certain others were also made for the same contractor, which proved to be of inferior quality, and were rejected by him. In an annual statement of accounts between the parties, made and signed by them on November 14, 1876, Alexander gave credit to the plaintiffs for the bricks thus accepted by the contractor, being 1167 thousand at $5.50 per thousand, amounting to $6418 50, and for the rejected bricks, there designated as culls, being 228 thousand, at $3.50 per thousand, amounting to $798. In the statement of the next year, made and signed on December 1, 1877, the latter sum of $798 is charged back against the plaintiffs; and on the same day Alexander gave to the plaintiffs a paper signed by himself, as follows: " This is to certify that I agree in final settlement with A. W. Crossman and Son, and when the said A. W. Crossman and Son shall make good all demands or obligations which I may have against them, to deduct from the amount that may be due me $798, the amount that I

allowed them for culls in our settlement of November 14, 1876."
And on December 3, 1878, he gave to the plaintiffs another
paper signed by himself, as follows: "This is to certify that I,
L. D. Alexander, agree that in final settlement with Amory
W. Crossman and A. W. Crossman and Son, that all the net
profits I may make on the brick-yard at West Brimfield during
any and all of the years I may hire and run the same shall
go towards paying their indebtedness to me, as I run the
yard for no other purpose than to assist them in paying such
indebtedness."

The master found, on the evidence before him, that Alexander
received $2.50 per thousand, or $2917.50 in all, more for the
bricks sold than he accounted for to the plaintiffs, which should
be allowed to them on final settlement, and that there should also
be allowed to them $798 for the bricks rejected; and he pro-
ceeded to state an account between the parties, with many items
on each side, and on all of the items showing the indebtedness
of the plaintiffs to Alexander interest was reckoned to October
15, 1885, and on all of the items showing credits in favor of the
plaintiffs, except on the two items now in question, interest was
reckoned to the same date, that being the date of stating the
account.    No explanation is given why no interest is reckoned
on these two items.    Alexander died in March, 1879; this bill
was filed on September 15, 1884.    It seems quite plain that the
plaintiffs are entitled to have interest computed on the sum of
$2917.50, received by Alexander from the contractor in 1876,
from the time of its receipt.    In respect to the culls, the mas-
ter's report does not clearly show that they were sold by Alex-
ander, or, if sold, at what date; or in what manner he used
or availed himself of them.    But the master's finding that the
plaintiffs are entitled to be allowed $798 for the culls implies
that, in some way, Alexander had the benefit of them, though
the report fails to show how.    It seems to us, on the whole, that
his finding must be taken to be a confirmation of the credit given
for the culls in the annual statement of 1876.    The omission to
reckon interest appears to have been an oversight.    We see
no good reason for it.    The item for the culls, in the master's
statement, precedes that for the money received for the bricks
which were accepted.    The effect of the master's report is to

give to the plaintiffs credit for these two items, as of October 15, 1885, a date more than six years after Alexander's death. This cannot be right. There seems to be no reason to doubt that interest should be allowed to the plaintiffs on the item of $2917.50 after the date of its receipt in 1876 ; and, on the whole, we think interest on the item of $798 for the culls should be reckoned from the same date. *Decree affirmed.*

*W. S. B. Hopkins*, for the defendant.

*C. L. Gardner*, for the plaintiffs.